UNITED STATES of America, Plaintiff,

v.

AMERICAN TELEPHONE AND TELE-GRAPH COMPANY; Western Electric Company, Inc.; and Bell Telephone Laboratories, Inc., Defendants.

Civ. A. No. 74–1698.

United States District Court, District of Columbia.

June 25, 1981.

Gerald A. Connell, U. S. Dept. of Justice, Antitrust Div., Washington, D. C., for plaintiff.

George L. Saunders, Sidley & Austin, Washington, D. C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

On May 11, 1981, defendants raised the issue of the admissibility of certain so-called "third party" documents, that is, documents which either were authored by employees or agents of companies that are in competition with defendants or purport to recount statements made by such employees or agents. The statements contained in these documents would, of course, be admissible in evidence as "admissions" under Rule 801(d)(2) of the Federal Rules of Evidence were these companies themselves parties to this action, and the question examined in this Memorandum is whether they should be admitted here even though the companies are not parties herein.

In response to the Court's request to the parties to brief this issue, defendants have proposed two possible routes for the admissibility of these statements: first, that the documents be received in evidence as admissions of a party opponent under Rule 801(d)(2); and second, that they be received under the residual exceptions to the hearsay rule, Rules 803(24) and 804(b)(5).

After having considered the memoranda filed by both parties, the Court has determined that it has sufficient authority to admit most of these documents pursuant to the residual exceptions to the hearsay rule. However, an additional procedure is being established for the admission of these documents, in order to avoid any possibility of unfairness to the government or to nonparties, and to ensure that all documents will be presented to the Court in their most useful and meaningful context.

### I

Defendants argue that the government has adopted, and purports to believe in, the statements made by companies such as MCI, Litton, and others upon whose active assistance it appears to have relied in presenting its case, and that these statements should therefore be admitted as "adoptive admissions" by the government under Rule 801(d)(2)(B).

In order to demonstrate that the government has "adopted" the statement of a third party, defendants must show that it somehow "has manifested [its] adoption or belief in [the statement's] truth." See 4 Weinstein's Evidence, ¶ 801(d)(2)(B)[01]. To meet this burden, defendants have primarily pointed to statements by the government to the effect that these third parties and the government are "aligned in interest" with regard to this case.

It is no doubt true that the government shares many common interests with the competitors of AT&T in this suit. This circumstance alone does not, however, entail the automatic adoption by the government of every relevant document originating in the files of these competitors. As stated by the Court of Appeals of this Circuit:

The Government has the same entitlement as any other party to assistance from those sharing common interests, whatever their motives. This is clearly

true in antitrust cases, where Congress has established a policy of private enforcement to supplement governmental action against offenders. This policy should not be thwarted by allowing an alleged antitrust offender to acquire the trial preparations of his private adversaries when they cooperate with Government lawyers in a related suit by the Justice Department. *United States v. American Telephone and Telegraph Company*, 642 F.2d 1285 at 1300 (D.C.Cir. 1980).

This congressional policy would similarly be thwarted were the Court to allow the alleged antitrust offender to introduce statements by private parties as admissions against the government merely because these parties have cooperated with the government's lawyers in the preparations for this suit. The government cannot be held to have adopted the contents of documents in the files of others, no matter how aligned in interest they might be, without specific proof of such adoption—proof that, as the Court understands it, is not present here.

## II

Defendants have also proposed the admission of these third party documents under Rule 803(24) or 804(b)(5).[1] These rules provide in different contexts for the admissibility notwithstanding the hearsay rule of

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

At the Court's request, defendants have submitted a sampling of third party documents for consideration under these rules. These documents are organized into seven broad categories: (1) contemporaneous memoranda reflecting discussions in meetings or telephone conversations with or by adverse third parties;[2] (2) internal memoranda of adverse third parties; (3) diaries and calendars of adverse third parties; (4) correspondence (letters from adverse third parties); (5) public statements by adverse third parties; (6) deposition testimony in other cases; and (7) consultants' reports supplied to adverse third parties.

■ No case law has been brought to the Court's attention either supporting or prohibiting admissibility of third party documents of these types pursuant to Subsection 24, and indeed both sides have candidly conceded that no direct precedent exists to sustain their respective positions. The Court accordingly is writing on a more or less of a clean slate in considering the advisability of admitting such documents under this rubric. For a number of interrelated reasons, the Court has concluded that it has sufficient authority and it will admit these documents under Subsection 24 if there are circumstantial guarantees of their trustworthiness.[3]

■ First. There obviously is a need for the Court to have a detailed picture of the circumstances surrounding the grievances of AT&T's competitors with the Bell System from the defendants' point of view,

---

**1.** For purposes of clarity and simplicity, these two Rules will hereinafter generally be referred to as Subsection 24.

**2.** That is, AT&T's competitors.

**3.** As for the requirements of materiality and relative probativeness of subparagraphs (A) and (B) of Subsection 24, the Court finds the documents in the sampling clearly to be material to issues that have been raised in the govern-

ment's case and that are expected to be raised in the defendants' case. The Court also finds that the efforts which defendants would have to expend in order to obtain other evidence of probativeness comparable to these third party documents would be unreasonable in light of the flexibility the Court has shown to the government in allowing various documents and depositions into evidence without specific, technical foundation.

just as the Court has received such a picture from the government's point of view. Thus, the admission of these documents would contribute to the ultimate goal of the determination of the truth through the adversary process, and would thereby serve the interests of justice. See subparagraph (C) of Subsection 24. Second. The laying of a foundation for an extremely large number of documents by means of live testimony would be cumbersome, unnecessarily time-consuming, and would no doubt interfere with the orderly presentation of an already complicated case.[4] Third. Subsection 24 does not represent a mere surplusage or useless appendage to the Rules; it has a significant purpose and substantial vitality of its own, and that is "to encourage the progressive growth and development of federal evidentiary law by giving courts the flexibility to deal with new evidentiary situations which may not be pigeon-holed elsewhere." *United States v. Mathis*, 559 F.2d 294, 299 (5th Cir. 1977). See also *Huff v. White Motor Corp.*, 609 F.2d 286, 291 (7th Cir. 1979). If the subsection is not to be applied to the present situation in the general fashion in which the Court proposes to apply it (see *infra*), it is difficult to see where and to what purpose it might ever be applied. Fourth. Although, as noted *supra*, the companies which originated the documents are not sufficiently synonymous with the plaintiff in this case to permit their receipt in evidence under Rule 801(d)(2)(B), the fact is that this plaintiff (the government) has largely built its case around charges made and records supplied, directly or indirectly, by these companies. That fact both tends to sustain the trustworthiness of the documents and to supply a significant additional element of fairness to use of the Subsection 24 procedure. Fifth. This case is both vast and complex and there is, certainly, a public interest in proceeding with and concluding it without the distractions of a pursuit of technical byways which add nothing substantive to the reliability of the evidence being presented. In such a case, in short, the Court would not be fulfilling its responsibility if it were not to pursue the goal of procedural fairness with a modicum of innovation.[5] See *United States v. American Telephone and Telegraph Co.*, 461 F.Supp. 1314, 1349 (D.D.C.1978).

On these various bases, the Court has concluded that, assuming trustworthiness (see *infra*), fairness to the government can be achieved without requiring defendants to produce hundreds upon hundreds of additional witnesses solely for the purpose of effecting the admission of documents the authenticity of which has not been questioned.

### III

■ In order to determine whether adequate guarantees of trustworthiness exist, the Court has examined the sampling of documents submitted by defendants to determine whether indications of reliability recognized in some manner by the drafters of the Federal Rules of Evidence are present.[6]

In this regard, for the documents in category (1) (contemporaneous memoranda reflecting discussions in meetings or telephone conversations), two questions must be answered—First, do these memoranda reliably represent what was said at the meeting or conversation? Second, are the substantive statements made in the course of the meeting or conversation themselves trustworthy?

Relevant to the reliability of the memoranda themselves is Rule 803(1), which excepts from the hearsay rule statements "describing or explaining an event or condition

---

4. The Court expresses no opinion on the question whether a procedure similar to that adopted here would be appropriate in a less massive case.

5. As indicated, there is no direct case law on the issue under consideration here, either pro or con.

6. See *United States v. McPartlin*, 595 F.2d 1321, 1350 (7th Cir. 1979) ("where evidence complies with the spirit, if not the letter, of several exceptions [to the hearsay rule], admissibility is appropriate under the residual exception").

made while the declarant was perceiving the event or condition, or immediately thereafter." The rationale behind this exception, as stated in the Notes of the Advisory Committee on the Proposed Rules, is that the "substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." The contemporaneity of these memoranda and the meetings or conversations which they represent appears to be a guarantee of reliability of similar magnitude for the purposes of Subsection 24.

Rule 804(b)(3) excepts from the hearsay rule a statement which "at the time of its making ... so far tended ... to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true." Although the substantive statements recorded in these memoranda probably would not fall within the letter of this exception, the theory which underlies is nevertheless instructive. The Advisory Committee stated that "the circumstantial guaranty of reliability for declarations against interest is the assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true." The substance of the statements contained in the three types of documents within defendants' category (1)—informal notes of conversations or meetings internal to adverse third parties, formal minutes of meetings between employees of adverse parties, and "external" memoranda by neutral third parties pertaining to their meetings with adverse third parties (to the extent these memoranda recount statements by the adverse third parties)—are all circumstantially reliable under the "declaration against interest" theory of the Advisory Committee. See *Huff v. White Motor Corp., supra,* 609 F.2d at 292; see also *Gichner v. Antonio Troiano Tile & Marble Co.,* 410 F.2d 238, 241 (D.C.Cir.1969).[7] In sum, the documents in question appear reliably to represent what was said in the conversations they record and the statements made in the course of these conversations are also sufficiently trustworthy for admissibility.[8]

While the parallels are not exact, the basic theory which underlies the admissibility under Subsection 24 of the documents in category (1) is also applicable to the following additional categories of documents: the internal memoranda of adverse third parties (category (2)); diaries and calendars of adverse third parties (category (3));[9] correspondence (category (4));[10] and public statements made by adverse third parties (category (5)). With respect to all of these categories, similar circumstantial guarantees of trustworthiness for admissibility under the residual exceptions to the hearsay rule are present, and documents in these categories will accordingly be likewise received in evidence. The sixth category, deposition testimony by employees of adverse third parties taken in conjunction with other litigation,[11] contains additional

---

**7.** Under Rule 804(b)(3), a statement against interest is not admissible, despite the fact that it is "intrinsically reliable" (*Gichner v. Antonio Troiano Tile & Marble Co., supra,* 410 F.2d at 242), if the declarant is available to testify in person. Thus, the statements in question by adverse third parties would probably not be admissible pursuant to Rule 804(b)(3). However, due to their "intrinsic reliability," the Court is authorized to admit them pursuant to Subsection 24.

**8.** The government is, of course, free to contradict these statements by evidence of its own on rebuttal.

**9.** These also contain some additional measure of reliability in that they are similar to business records, exempted from the hearsay rule under Rule 803(6). Among the elements of "unusual reliability" of business records found by the Advisory Committee include "regularity and continuity which produce habits of precision" and "actual experience of business in relying on them." These elements would be present to some degree in diaries and calendars.

**10.** But only to the extent that the letters were authored by an employee or agent of an adverse third party.

**11.** Deposition testimony by individuals other than adverse third parties, without the added reliability that results from "declarations against interest," will be considered not under Subsection 24, but rather pursuant to the rules for deposition testimony that have been used throughout the trial.

circumstantial guarantees of trustworthiness in that it was taken under oath subject to penalties for perjury, and such depositions will also be admitted.

Only one of the seven categories of documents lacks similar guarantees of trustworthiness under Subsection 24: the consultants' reports supplied to third parties (category 7). The Court has no way of evaluating the reliability of the studies performed by these consultants unless the authors of the studies are subject to direct and cross examination. Accordingly, it will not admit such documents under the residual exceptions to the hearsay rule.

### IV

Since the documents to be admitted under this procedure are not encompassed within an explicit exception to the hearsay rule, it is appropriate to impose procedures designed to insure that their admission will not unfairly disadvantage the party against which they will be admitted. This may appropriately be accomplished by taking full advantage of and giving precise procedural context to the general limitation attached to Subsection 24 to the effect that

> a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Mindful of this limitation, and of the government's meritorious argument that some of these documents may be misleading if not placed in context, the Court has designed the following procedure for the admission of these documents:

1. Three weeks before defendants intend to offer a third party document [12] evidence, they shall transmit to the government the document, and the name and address of its author.[13]

2. Two weeks before defendants intend to offer the document, the government shall transmit to defendants a list of those documents the admission of which it does not find objectionable, and a list of those documents which in its view either (i) could not be admitted without fundamental unfairness to the government or any particular individual, or (ii) must be placed in a larger context for their true weight to be evaluated by the Court.

3. Documents in category 2(i) above will not formally be received in evidence as such but will come before the Court only to illustrate or aid the Court in its understanding of the live testimony by their authors.[14]

4. For documents in category 2(ii) above, defendants shall, one week before they intend to offer a document, submit to the government and to the Court written testimony by the author or others serving to lay the foundation for the introduction of this testimony. This "foundation" may be laid in the form that has been employed for the introduction of documents throughout this trial—that is, the declarant's stating that he wrote or compiled the document, the relationship of his business responsibilities to the document, and that it fairly and accurately reflects his thoughts/observations at the time written. At or prior to the time the document is offered, the government will state whether the foundation is sufficient to remove its objection. If the government is not satisfied, it will be

---

12. This does not include documents already subject to other admissibility procedures, *i. e.*, the judicial notice documents.

13. Unlike in the Rule 801(d)(2) situation (as it has evolved during this trial, see Memorandum of April 9, 1981, pp. 3–5), documents for which no writer or compiler is identified will not be admitted under this procedure.

14. The Court has permitted documents authored by a testifying witness to be admitted in the course of his testimony notwithstanding the hearsay rule as part of his testimony. See Transcript, p. 323.

entitled to call the author to the stand [15] and cross-examine him before the document will be admitted; and it may also introduce additional documents if necessary to place the AT&T documents in a meaningful context. The cross-examination or introduction of additional documents may take place as soon after the offer of the document as desired or possible (given the availability of the witness), or the government may defer its cross-examination until its rebuttal case.[16]

5. The Court assumes from the statements in the government's Memorandum, that the proportion of documents for which a written foundation will be requested will be small in comparison to the overall number of third-party documents (see Plaintiff's Trial Memorandum on the Admissibility of Documents Authored by Non-Parties, June 3, 1981, p. 4, n.* ) and insofar as objections under 2(i) above are concerned, they will be required to be supported in each instance by specific reasons.[17]

6. The government is free to call as witnesses in its rebuttal case the authors of any of these documents, whether or not it has objected to their admission in order to establish the context in which they were generated.

---

**15.** In this action, unlike most others, it is not unfair to place such a burden on the objecting party for two reasons: (1) there are no significant financial impediments to the government's ability to call such witnesses, and (2) under the Clayton Act (15 U.S.C. § 22) the Court enjoys nationwide subpoena power and the witnesses can accordingly be brought here wherever they may be.

**16.** The parties may be expected to arrive at an informal procedure in advance of the offering which will facilitate the presence of witnesses whom the government wishes to question, and they are also free, by agreement, to alter the time requirements specified herein with the approval of the Court. If the government elects to defer its cross examination, the Court may admit the document conditionally subject to a motion to strike.

**17.** In the event that the government makes objections overzealously, the Court notes that it has the authority to admit all of these documents under the Rule as long as defendants give the advance warning outlined in paragraph 1 above, and that it has added other procedures only to ensure that legitimate, not frivolous, objections unforeseen by the Rule are taken into account.